Edward Conlan *v.* James H. Burton et al.

Superior Court      Hartford County      File No. 119547

Memorandum filed November 25, 1959

*Alexander A. Goldfarb,* of Hartford, for the plaintiff.

*Regnier & Moller,* of Hartford, for defendants Burton and Cooley.

*Leonard G. Tracy,* of Hartford, for defendant Sweezy.

Bogdanski, J. The petitioner herein brings this action pursuant to the provisions of § 9-328 of the 1958 Revision, seeking a determination of an election dispute arising out of a town election of the town of Rocky Hill on October 5, 1959, with respect

to the office of board of selectmen. He alleges that he was a candidate for the office of first selectman on the Democratic ticket at this election and that after the election had been concluded, the defendant James R. Burton, acting as moderator, announced the following votes received by the candidates: First selectman—Democratic, Edward Conlan, 1132; Republican, William L. Harris, Jr., 1142. Selectman —Democratic, Edward P. Hayes, 1148; Republican, George H. Cooley, 1120. He also alleges that the defendant moderator immediately thereafter declared that the candidates Harris, Jr., Hayes and Conlan were duly elected to the board of selectmen and that subsequently thereafter the defendant moderator reversed his declaration and declared George H. Cooley as elected to the office of selectman instead of the petitioner.

Petitioner claims to have been duly elected to the board of selectmen in accordance with § 9-188 of the 1958 Revision and that he is aggrieved by the reversed ruling of the moderator and now seeks the issuance of a certificate under the seal of this court which shall entitle him to the office, and a writ of mandamus requiring the defendants to deliver to him the appurtenances of such office.

From the evidence presented it is undisputed that Harris defeated Conlan for the office of first selectman by ten votes; that Cooley received 1120 votes, Hayes received 1148, and Conlan received 1132 votes; and that Hayes was elected a member of said board.

The question presented is whether Conlan or Cooley was duly elected to the board to fill the remaining position. Under § 9-188, the electors could vote for two candidates representing a bare majority of the members to be elected. The claim of the defendants is that the electors should have had the choice

of any two, which they did not have, because the voting machine as set up only gave them a vertical choice between Conlan or Harris, and Hayes or Cooley. This claim is without merit, as set forth in *Fisher* v. *Kallenbach,* 135 Conn. 147, 150, wherein the court stated: "The purpose of an election is to determine which candidate is preferred by a plurality of the voters casting their ballots for the named office. . . . Since the office of first selectman was created by the General Assembly, it follows that the election officials were required to set the voting machines so that the voters had to choose between the candidates for that office. The plaintiff was therefore not legally entitled to vote for two candidates for the same office . . . ."

Said § 9-188 further provides: "The votes cast for the unsuccessful candidate for first selectman shall be counted as votes for him as a member of such board . . . ." This language of the statute is clear, definite and unambiguous and admits of no statutory construction. By its language, history and administrative interpretation, the legislative intent appears clear. When the office of first selectman was created in 1945, it was recognized by the legislature that both major parties would put forth their most able candidates for the office of first selectman, and it was the evident intention of the legislature to allow the unsuccessful candidate to vie for a place on the board. Sup. 1945, § 60h. The separate office of first selectman was established in legal recognition of the importance to which the office had grown in Connecticut over the years. Report of the Legislative Council, pp. 79-80 (November 16, 1944).

By establishing this separate office, the legislature expressly allowed the votes of the defeated candidate for said office to be credited to him as a board member. This was done for two reasons. The legis-

lature wanted to preserve the historical plurality rule, namely, "[t]hat number of persons sufficient to fill the offices . . . who have the highest number of votes shall be elected." Rev. 1930, § 281 (Rev. 1958, § 9-188). Although independent electoral status was given to the office of first selectman, the General Assembly saw fit to continue to honor the respective vote-getting powers of each of the candidates to the board as a whole.

Defendants' main and basic contention is that Conlan contended only with his Democratic counterpart, Hayes, in this case, and since Hayes received the higher number of votes, Conlan was not elected to the board. This claim is predicated on the contention that the successful candidate for the office of first selectman determines the majority of the board; and since the Republican party is the majority party in the town of Rocky Hill, and the voters recognized Harris as the highest vote-getter for the office of first selectman, he should have a majority to work with in order to be an effective first selectman. Such a contention is without merit. Our statutes provide for minority representation on boards of selectmen (§ 9-188), but nowhere in either our statutes or case law is such majority representation as here advanced provided for.

Wherefore the issues are found for the petitioner on his application. The prayed-for prayers for relief may be prepared for proper execution by the court.